**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 09 CR 12 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| CORNELIOUS HAYES | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Cornelious Hayes is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The government intends to call at trial an eyewitness to the event, Individual X, who will testify that he saw Defendant holding a gun. X identified Defendant in a photograph array presented to him in the U.S. Attorney's office on December 11, 2008. Defendant now moves to suppress X's identification of Defendant in the photo array, as well as any subsequent identifications of Defendant by X, as being unduly suggestive in violation of the Fifth Amendment. For the reasons stated below, the motion to suppress is respectfully denied.

**I.    BACKGROUND**

On September 14, 2008, at approximately 3:00 a.m., the Chicago Police Department ("CPD") received a 911 call about shots fired at 7251 S. Perry Street. Gov't's Consolidated Resp. 1. The caller stated that an African-American male had a gun and was arguing with others. She described him as wearing all black clothing with dreadlocks in his hair. Chicago Police Officers proceeded to the area where they witnessed Defendant putting two objects down in an empty garage. Those objects, which were recovered, were firearms.

1

X claims to be an eyewitness to the events that night and claims to have seen Defendant holding a gun and threatening another individual named "Charlie." In a statement to ATF Agent Jeffrey Schoenberger dated December 11, 2008, X stated that he knew Defendant as "C.B.," had seen him 10-20 times around the neighborhood, and knew that he loitered outside a grocery store at the corner of 72nd and Wentworth. Gov't's Consolidated Resp. Ex. A. X recalled seeing C.B. with a gun on a night in September 2008.[1] X described C.B. as wearing a black t-shirt, black jeans, black sneakers, and having dreadlocks in his hair. X heard four shots fired. After X's mother called 911, the police came and questioned her. X then saw the police arresting C.B.

X was shown a photo array of nine men on December 11, 2008. X was asked to look at the photos. He was told to take his time, and that the pictures may or may not be of individuals involved in the incident that night. X was asked if he recognized anybody in the array. X "immediately identified the center photo as C.B., the man who was holding the gun the night of the shooting." *Id.*

X made this identification approximately three months after the shooting, and two days after his mother was interviewed by an ATF agent over the phone. Def.'s Mot. 6.

**II. STANDARD**

A witness's identification violates a defendant's right to due process when the identification procedure is "'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *United States v. Williams,* 522 F.3d 809, 810 (7th Cir.2008) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). To determine whether a particular procedure violated a defendant's constitutional rights, the court must undertake a two-pronged analysis: (1) whether the process was unduly

---

[1] While X did not remember the exact date of the incident, he knew it was in September 2008.

suggestive, and (2) if so, whether the identification was nevertheless sufficiently reliable in the totality of the circumstances. *United States v. Griffin,* 493 F.3d 856, 865 (7th Cir.2007); *U.S. v. Jones*, 454 F.3d 642, 649 (7th Cir. 2006). "In examining the identification process, we focus on the manner in which the witness was shown the suspect's likeness, reserving criticism for procedures that have been orchestrated to yield the identification of one particular suspect." *Jones*, 454 F.3d at 649. "For the most part, these suggestive procedures involve the repeated presentation of only one suspect by the police to a witness, or a lineup in which the suspect is clearly distinguishable from the other persons." *Id.*

## III. ANALYSIS

At trial, the government intends to introduce evidence that X's mother called 911 on September 14, 2008 regarding this incident, and that X viewed a nine-person photo array on December 11, 2008 and positively identified defendant as the individual he knew as "C.B." and that he saw holding the gun. Defendant moves to suppress the December 11, 2008 identification and all subsequent identifications made by X.

The photo array shows headshots of nine African-American men in a three by three grid. Gov't's Consolidated Resp. Ex. A at 2. All men appear to be of similar age and similar weight. Seven of the nine men appear to wear their hair in a dreadlocked style. Three men are wearing white t-shirts, one man is topless, one man is wearing a collared shirt, two men are wearing colored shirts over white t-shirts, and two men (including Defendant) are wearing dark-colored t-shirts. None of the men are wearing glasses or jewelry, and none have unusual physical characteristics to differentiate him from the others.

Defendant argues that the photo array is unduly suggestive because his picture is in the center and he is the only individual wearing a black t-shirt. Defendant also argues that the photo

3

array was unduly suggestive because it contained no other individuals that X had claimed to know from the neighborhood; because it displayed nine photographs simultaneously, rather than one at a time sequentially, and the simultaneous showing suggested to X that the perpetrator must be among the nine (despite the fact that X had been told that the pictures in the array may or may not be of the individuals involved in the incident). All these factors are insignificant here. The Fifth Amendment does not require a criminal defendant be compared with individuals with identical features and characteristics, nor does it require what the defendant believes to be the most neutral possible presentation of images; "[a]uthorities conducting line-ups are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation." *States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002). The Seventh Circuit has upheld the admission of photo arrays where there were more significant differences between the individuals pictured and similar concerns with the presentation of the images. *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996) (photo array not unduly suggestive even where defendant complained that he was 3-5 inches shorter and 20-45 pounds lighter than the other participants, and was the only suspect wearing a green t-shirt with a slight build and a dark complexion); *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002) (standing line-up not unduly suggestive when it did not include any other individual that matched defendant's height and weight); *United States v. Moore*, 115 F.3d 1348, 1359 (7th Cir. 1997) (photo array not unduly suggestive when defendant was the only one pictured with a notched eyebrow); *United States v. Carter*, 410 F.3d 942, 949 (7th Cir. 2005) ("[I]f the bottom-center position is an inherently pronounced position . . . then every photo array with a suspect pictured in the bottom-center position could be unduly suggestive. We see no basis for such a rule.").

Defendant also argues that the photo array was unduly suggestive because X made his identification *after* seeing Defendant get arrested. The argument is that because he witnessed Defendant's arrest, X must have known that that Defendant was being prosecuted for a gun charge, so when X was brought in to identify individuals involved in the September 2008 incident, he was already predisposed to select Defendant's photograph. This logic is tortured and, if followed, would require courts to exclude any identification made by an eyewitness to a crime who later saw the perpetrator being arrested. Defendant's argument also overlooks the fact that prior to the incident, X knew and recognized Defendant from the neighborhood. In September 2008, he saw Defendant holding a gun and later being arrested; months later, when asked to identify individuals involved in the September 2008 incident, X identified Defendant as the person he saw holding the gun. X's prior familiarity with Defendant underscores the reliability of his later identification.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the photo array through which X identified Defendant was not unduly suggestive. Defendant's motion to suppress is respectfully denied.


Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** July 7, 2009